[Civ. No. 15693. Third Dist. Nov. 5, 1976.]

KENNETH L. TWYFORD, Plaintiff and Appellant, v.
VERNIE B. TWYFORD et al., Defendants and Respondents.

**COUNSEL**

Donald A. Peters for Plaintiff and Appellant.

Rust & Armenis and David I. Brown for Defendant and Respondent.

**OPINION**

**PARAS, J.**—Plaintiff Kenneth Twyford (hereinafter "husband") appeals from a judgment dismissing his $150,000 complaint for malicious prosecution, abuse of process and defamation, against his former wife Vernie Twyford (hereinafter "wife") and her two attorneys. The complaint alleges that wife and her attorneys falsely accused husband of a felony, to wit, forging wife's name on a joint income tax refund check, thereby absconding with her half of the proceeds in the sum of $87.60.

The "accusation" of which husband complains was contained in a "Request for Admissions" (Code Civ. Proc., § 2033) filed by wife's attorneys in the dissolution action after the final decree;[1] it was done in connection with wife's efforts to have husband held in contempt for allegedly failing to pay attorney fees, spousal support and certain sums of money.

Husband neither admitted nor denied the request for admissions, but rather filed a motion to strike it on the ground that it was irrelevant to the pending contempt proceedings. The declaration initiating the contempt proceedings made no mention of any income tax refund.

Prior to the contempt hearing, wife's attorneys notified the court by letter that the amounts had been paid and that the motion re contempt should be dropped. They also stated, ". . . we have no interest at the present time of pursuing our request for admissions. . . ." At the time set for hearing, the court ordered both the motion re contempt and the request for admissions dropped from the calendar, and denied husband's motion to strike. Husband filed the present action on April 28, 1975. With reference to the request for admissions he alleged: "Defendants made and filed said statements and document with the purposes to intimidate, vex, harass, disgrace, defame, and injure KENNETH L. TWYFORD, plaintiff herein, and to wrongfully prejudice the Court in said case No. 236519 against said KENNETH L. TWYFORD, defendants intending thereby to wrongfully insure imposition of criminal and other sanctions against said KENNETH L. TWYFORD, and to wrongfully and unlawfully aid defendants in their desire, and the defendants did so intend, to coerce said KENNETH L. TWYFORD to somehow pay the amounts set forth in the said declaration which defendants filed on April 5, 1974, and in the said document which defendants entitled a 'Request

---

[1]The "Request for Admissions" reads as follows:

"Respondent VERNIE B. TWYFORD requests that Petitioner KENNETH L. TWYFORD admit the truth of the following matters of fact within 20 days after service of this request pursuant to § 2033 of the Code of Civil Procedure:

"1. That the endorsement on the check or draft of the State of California, Warrant No. 27-113760 bearing the facsimile of the signature 'V. B. Twyford' was not made by Respondent VERNIE B. TWYFORD.

"2. That the endorsement on the above mentioned draft was in fact made by Petitioner herein, KENNETH L. TWYFORD.

"3. That at no time did said KENNETH L. TWYFORD have the authority or permission of VERNIE B. TWYFORD to endorse the draft on her behalf or cause said draft to be endorsed on her behalf.

"4. That said KENNETH L. TWYFORD does owe to said VERNIE B. TWYFORD a sum equal to one-half of the face amount of said draft, or approximately $87.60."

for Admissions', and to discourage and coerce said KENNETH L. TWYFORD from the filing of future proceedings for modification of the spousal support order previously made by said Court . . . ."

On appeal, husband contends that the trial court erred in sustaining the demurrer to his complaint. He argues six grounds.

"I. The order of the Superior Court . . . denying the motion to strike the 'Request for Admissions' was not res judicata . . . .

"II. Respondents' conduct constituted malicious prosecution of Appellant. The dismissal of Respondents' 'Request for Admissions' was a termination favorable to Appellant . . . .

"III. Respondents' conduct constituted an abuse of process . . . .

"IV. Respondents' conduct constituted libel and defamation . . . .

"V. Respondents' conduct was not privileged . . . .

"VI. Appellant's motion to strike Respondents' demurrer should have been granted . . . ."

## I

The order denying the motion to strike the request for admissions had no effect whatever upon the judgment of dissolution or any judgment, and was therefore not appealable and not final. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 81, 82, pp. 4091-4093; *Hixson* v. *Hixson* (1956) 146 Cal.App.2d 204 [303 P.2d 607].)

For whatever value it has to husband, we hold that it had no res judicata effect.

## II

The tort of malicious prosecution lies for the prosecution of civil as well as criminal actions, and includes the malicious prosecution of ancillary civil proceedings, such as the filing of a cross-complaint (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]), the institution of a special insanity

proceeding (Welf. & Inst. Code, § 5203; *Sutherland* v. *Palme* (1949) 93 Cal.App.2d 307 [208 P.2d 1035]; *Brock* v. *Southern Pacific Co.* (1948) 86 Cal.App.2d 182, 185 [195 P.2d 66]); or the filing of a will contest in connection with the probate of an estate. (*MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 287 [79 Cal.Rptr. 707, 35 A.L.R.3d 641].)

■ Husband cites no authority holding that a "request for admissions" is an ancillary proceeding sufficient to support a malicious prosecution complaint. He simply argues that his right to recover "should not 'depend upon the technical form of the proceeding by which it is inflicted,'" because "the obvious effect is the same as if the [defendants] had filed a directly malicious and false complaint against [husband]." But this is not true. The expense and psychological trauma of being sued is certainly greater than being served with a request for admissions. In contrast to the time required to defend a complaint, cross-complaint, etc., attorney time required to respond to a request for admissions is quite minimal. One word would handle each request (at least in this case), "denied" or "admitted."

The Supreme Court in *Bertero* reasoned that a malicious prosecution action could be based upon a cross-complaint or counterclaim, because "a cross-pleading creates an action distinct and separate from an initial pleading. [Fn. omitted.] Dismissal of the complaint, for instance, does not affect the independent existence of the cross-complaint or counterclaim." (13 Cal.3d at p. 52.) Similarly, insanity proceedings, even when initiated in connection with other litigation, are independent and do not depend upon the other proceedings for their prosecution. (See Welf. & Inst. Code, § 5201 et seq.) A will contest, on the other hand, *does* depend upon the existence of an action to probate the will. However, as pointed out in *MacDonald* v. *Joslyn, supra,* Probate Code section 371 states that "On the trial [of the will contest], the contestant is plaintiff and the petitioner is defendant. . . ." (275 Cal.App.2d at p. 288, fn. 1.) Moreover, the parties are entitled to a jury trial, giving the will contest all the earmarks of a separate proceeding initiated by the contestant. By contrast, a request for admissions is not a separate proceeding and has no independent existence. It will not support a malicious prosecution complaint.

## III

■ Husband argues that he properly alleged an abuse of process.

■■ As stated in *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 297 [113 Cal.Rptr. 113]: "The gist of the tort is the *misuse* of the power of the court: It is an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose. [Citations.] Some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process is required. And, generally, *an action lies only where the process is used to obtain an unjustifiable collateral advantage.* For this reason mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort." (Italics added.)

■ The Supreme Court, in *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, footnote 4 [101 Cal.Rptr. 745, 496 P.2d 817], points out that unlike malicious prosecution, the term "process" has been broadly interpreted to include the entire range of procedures incident to litigation:

"This broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution."

"Process" includes the use of interrogatories (*Younger* v. *Solomon, supra,* 38 Cal.App.3d 289) as well as depositions. (*Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152].) In *Thornton,* the "abuse" was an improper attempt to disseminate irrelevant defamatory statements to the press; in *Younger,* to publish a confidential complaint charging professional misconduct pending before the State Bar.

Although a request for admissions is technically not a discovery device, but rather a means for eliminating undisputed matters from the necessity for trial, *Haseltine* v. *Haseltine* (1962) 203 Cal.App.2d 48, 61 [21 Cal.Rptr. 238], it is nevertheless capable of being abused in the same way as interrogatories and depositions, and therefore can form the basis for an abuse of process action. ■ In the present case, however, any collateral advantage gained from suggesting that husband forged a

signature and cashed the joint income tax refund check, if it exists at all, is de minimis. Difficulties over such refund checks are not uncommon in dissolution proceedings; as a practical matter, there is normally little concern, provided prompt pro rata payment to the other spouse is made. The possibility of a prosecution for forgery in a normal marital case is virtually nonexistent. We perceive no collateral advantage to be gained by wilfully making false charges of this sort; any possible prejudice can be overcome by a firm denial, placing the onus on the proponent to prove it or concede that the charge was untrue, with the concomitant cloud on credibility that failure to prove it entails.

■ Moreover the request for admissions comes within the privilege for publications made in a judicial proceeding.[2] Civil Code section 47, subdivision 2, states as follows:

"A privileged publication or broadcast is one made—

".   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"2. In any . . . judicial proceeding, . . . provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce or an action prosecuted under Section 137 of this code made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action." Except for defamation of nonparties in dissolution and section 137 actions (separate maintenance, now Civ. Code, §§ 4503, 4700, and 4800-4812), the above quoted statute on its face makes all publications in a judicial proceeding absolutely privileged. This absolute privilege has, however, been limited by the courts to publications which are "pertinent," (*Carpenter* v. *Ashley* (1906) 148 Cal. 422, 426 [83 P. 444]) or which have "a reasonable relation to the action." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405].)

---

[2]Although the application of this privilege usually arises in the context of a defamation action, it is also applicable to abuse of process and other actions. (*Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 300 [113 Cal.Rptr. 113] (citing cases).)

Thus, as stated in *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d at page 90, this limitation "requires the demonstration of some connection with the proceedings, yet dispenses with the requirement of relevancy, materiality or pertinency, in their technical sense . . . ." The court adds: "On the one hand it does not protect attorneys, witnesses and litigants who use the mere fact that they are talking in the course of a judicial proceedings [*sic*], as a pretext to defame persons with respect to matters which have nothing whatever to do with the question under consideration [fn. omitted], yet it does shield counsel, his client and witnesses from having their motives questioned and being subjected to litigation if some *connection* between the utterance and the judicial inquiry can be established." (Italics added.)

Later cases have further elaborated upon the limitation, separately stating certain logical corollaries which necessarily follow from it. ■ "[A]bsolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." (*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718]; see also *Younger* v. *Solomon, supra,* 38 Cal.App.3d at p. 301.)

■ In the present case, the interlocutory judgment of dissolution of marriage stated: "It Is Further Ordered that any refund that may be paid to the parties from the United States Internal Revenue Service or the State of California shall be divided equally between the parties upon receipt thereof."

Although the order to show cause re contempt which was pending when the request for admissions was filed did not mention the income tax refund, we perceive no necessity for wife to have amended the order to show cause *prior* to the filing of the request for admissions, in order to make it more "relevant." Presumably, if husband admitted cashing the check, an order to show cause would follow, in the absence of prompt payment of the $87.60. Thus, although not strictly relevant, there is no doubt that the request for admissions had a reasonable connection or relation to the action and was made to achieve the objects of the litigation.

Moreover, the request for admissions had some direct bearing upon a potential issue in the pending hearing; whether husband had sufficient funds with which to purge himself of a possible contempt. This constitutes a connection or relation to the litigation and is calculated to achieve its objects.

Finally, we note that " '. . . doubts are to be resolved in favor of relevancy and pertinency; that is to say, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that there can be no reasonable doubt of its impropriety.' " (*Thornton* v. *Rhoden, supra,* 245 Cal.App.2d at p. 93.)

IV

Plaintiff's third cause of action alleged that the request for admissions was libelous, in that it constituted a false accusation that plaintiff had committed a felony. Assuming this to be so, for the reasons stated in our above discussion, such statements were absolutely privileged by Civil Code section 47.

The two last contentions of plaintiff require no further discussion. The judgment is affirmed.

Puglia, P. J., concurred.

**FRIEDMAN, J.**—I concur in the opinion and judgment. I would impose sanctions upon counsel for plaintiff. The lawsuit and the appeal are frivolous. They constitute a gross imposition on our overcrowded courts and upon the taxpayers who maintain these courts.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1976.